FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

**DarrasLaw**

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121
Attorneys for Plaintiff
Vance Allen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| VANCE ALLEN, | Case No: |
|---|---|
| Plaintiff, | COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
| vs. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendant. | |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

3. Those avenues of appeal have been exhausted.

4. Plaintiff is informed and believes and thereon alleges that the Snacks Holding Company dba Flagstone Foods, Inc. Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Snacks Holding Company dba Flagstone Foods, Inc. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, Vance Allen, with income protection in the event of a disability and is the Plan Administrator.

5. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

6. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

7. At all relevant times Plaintiff was a resident of the United States, an employee of Snacks Holding Company dba Flagstone Foods, Inc. its successors, affiliates and/or subsidiaries, and a participant in the Plan.

8. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-963477 that had been issued by Defendant LINA to Snacks Holding Company dba Flagstone Foods, Inc. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

9. The Plan provides a monthly benefit equivalent to the lesser of 60% of an Employee's monthly covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit, less the deductions provided for under the Plan, following a 180 day

Elimination Period.

10. The Plan defines "Disability" as: "An Employee is Disabled if, because of Injury or Sickness,

1. he or she is unable to perform the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2. after Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings."

11. The Plan provides monthly benefits to the later of the Employee's Social Security Normal Retirement Age (SSNRA), or to the Employee's 65th birthday.

12. Prior to his disability, Plaintiff was working as a tractor-trailer truck driver for Snacks Holding Company dba Flagstone Foods, Inc.

13. On or about July 11, 2014 Plaintiff fell when he was coming down the stairs and suffered significant injuries to his head and spine. Plaintiff was transported to the hospital by emergency services.

14. On or about July 12, 2014, an MRI was done to evaluate all levels of Plaintiff's spine. The Report revealed a T2 hyperintense nonenhancing lesion in the central cord at C4-C5 measuring 8mm in dimension. The report also noted a L5-S1 right subarticular protrusion contacting the traversing right S1 nerve root.

15. On or about July 13, 2014, Plaintiff was seen for a neurosurgical consultation with Dr. Tucci. Plaintiff presented with the chief complaint of weakness and numbness of hands and legs. Plaintiff was unable to ambulate. The following findings were noted on exam: abnormal reflexes in upper and lower extremities, coordination was grossly diminished for fine finger movement, and sensory was decreased to light touch and pinprick in bilateral upper and lower extremities. Following the exam and

review of the MRI, Dr. Tucci noted "MRI shows a cord contusion with now active cord compression."

16. On or about August 11, 2014, Plaintiff was seen by Dr. Tucci, Neurosurgery for follow up. Dr. Tucci recommended operative intervention to preserve cord function.

17. On or about September 11, 2014, Plaintiff underwent a left side cervical laminoplasty at C3 – C7 performed by Dr. Robert Isaacs, Neurosurgeon.

18. On or about October 6, 2014 Plaintiff was seen by Dr. Gennosa, Family Medicine for follow up for spinal cord injury, gout, chronic kidney disease, and generalized muscle weakness. Dr. Gennosa noted that Plaintiff has an ataxic gait, described as "slow and unsteady" and was assisted with walker. Plaintiff reported residual neuropathic pain and weakness.

19. On or about October 13, 2014, Plaintiff was admitted to the hospital for treatment of a large pulmonary embolism within the popliteal vein.

20. On or about December 1, 2014, Plaintiff reported experiencing ongoing LUE and RUE hand strength issues and paroxysmal neuropathic pain. Medication adjustments were made and a referral to PM&R was considered.

21. On or about January 16, 2015, Plaintiff underwent a lumbar epidural injection at L4-L5.

22. On or about February 2, 2015, Plaintiff underwent a second epidural steroid injection at L4-L5.

23. On or about February 16, 2015, Plaintiff underwent the third and final epidural steroid injection at L5-S1.

24. On or about April 9, 2015, Plaintiff was seen for a flare of gout; Plaintiff reported pain and swelling of his right wrist and left knee to Dr. Gennosa. Movement and palpation caused pain in the left knee. Dr. Gennosa administered an injection in the left wrist to help with the inflammation and pain.

25. On or about May 4, 2015 Dr. Gennosa noted reports by Plaintiff of continual nerve pain in his fingers and on the side of his legs. Dr. Gennosa wrote "Has poor fine

motor control, wife has to help him buttoning clothes, grip strength is weak, vision is blurred at times."

26. On or about December 1, 2015, Plaintiff was seen by Dr. Gennosa who noted "Pt. complains of cramps in his muscles all over. Hands tingling and numbness. He has shooting pains down his legs and they feel weak."

27. On or about March 8, 2016, Plaintiff had an office visit with Dr. Gennosa. The notes from that visit document the following:

- "Unable to sleep due to pain; has throbbing pains legs, hips, and difficult staying asleep due to pain…Also have severe cramps at time."
- "Pain, insomnia, secondary to spinal cord injury, muscle spasm."

28. On or about July 25, 2016, Plaintiff was seen by Dr. Gennosa. Plaintiff reported that his right shoulder pain was so severe he is unable to raise his arm. Plaintiff reported that he continued to have cramps in his hands and shoulders and pain in his right hip.

29. On or about August 10, 2016, Plaintiff had a left lower extremity venous Doppler. The impression was Left DVT, peroneal veins.

30. On or about October 13, 2016, Defendant paid Plaintiff's LTD claim through January 7, 2017 and closed Plaintiff's claim.

31. On or about October 31, 2016, Plaintiff returned to see Dr. Gennosa with complaints of "pain all over, fingers burning and tingling." It was reported that the pain was worsened after Plaintiff tripped over a root in his yard causing him to fall onto his left shoulder and side. Dr. Gennosa noted that on exam neck movements were painful and pain was rated at 7-8/10.

32. On or about December 14, 2016, Plaintiff timely appealed the denial of his Long Term Disability claim.

33. On or about February 6, 2017, Plaintiff was referred by Dr. Gennosa to seek treatment with pain management.

34. On or about February 7, 2017, Plaintiff was seen by JoAnne Eure, ANP at

Greenville Pain & Spine. Following an exam, NP Eure noted diminished range of motion in Plaintiff's cervical spine, lumbar paraspinous tenderness, pain with flexion, pain with extension in lumbar spine.

35. On or about February 8, 2017, Defendant upheld the denial of Plaintiff's LTD claim.

36. On or about March 2, 2017, Plaintiff appealed the denial of his LTD claim for a second time.

37. On or about April 6, 2017, Plaintiff returned to NP Eure with complaints of continued posterior neck pain with shoulder involvement. Plaintiff reported poor control of symptoms on his current medications regimen and that he has difficulty holding on to things and drops things often. Pain was described as burning and stabbing and radiates to his legs.

38. On or about May 15, 2017, Plaintiff had an MRI of his lumbar spine. The report states:

> "In comparison to 7/12/2014, again there is mild developmental lumbar spinal canal narrowing and superimposed moderate epidural lipomatosis with diffuse narrowing of the thecal sac from L4 to the sacrum. The L5 vertebral body is partially sacralized on the right. There is moderate bilateral SI joint DJD with bridging osteophytes right greater than left. There is moderate facet DJD at multiple levels, most severe at L4-5. At L5-S1 there is slight increased prominence of right paracentral uncinate spurring a mild disc protrusion and annular tear just contacting the proximal right S1 nerve root. At L4-5 there is progression of facet DJD and slight increased prominence of mild uncinate spurring a broad-based central disc protrusion causing mild bilateral lateral recess narrowing and mild bilateral neural foraminal narrowing."

39. On or about July 25, 2017 a Transferable Skills Analysis was conducted by Nicole Surmacy, MS, CRC. Based on the restrictions and limitations identified in the medical review by Dr. Richard Vatt, Ms. Surmacy determined that Plaintiff had

Transferable Skills to perform the duties of Gate Guard, which Ms. Surmacy identified as a sedentary level occupation.

40. On or about July 25, 2017, Defendant upheld the decision to deny Plaintiff's Long Term Disability Benefits.

41. Based upon the substantial medical evidence in the possession of LINA at the time of the denial, the decision to deny disability insurance benefits was wrongful and contrary to the terms of the Plan.

42. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about January 8, 2017, to the present date.

43. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

44. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits including all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about January 8, 2017 together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits including reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to future disability

payments/benefits so long as he remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: January 29, 2018

**DarrasLaw**

*/s/ Frank N. Darras/*

FRANK N. DARRAS
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorneys for Plaintiff